"O"

FILED
CLERK, U.S.D.C. SOUTHERN DIVISION

SEP 19 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUYVESANT T. BONNER, | Case No. SACV 12-09213 AN |
| Plaintiff, | ORDER |
| v. | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant.[1/] | |

Pursuant to the Court's Case Management Order, the parties have filed the Administrative Record ("AR") and a Joint Stipulation ("JS") raising two disputed issues. The parties have consented to proceed before the Magistrate Judge. The Court has carefully reviewed the parties' respective contentions in conjunction with the AR. This matter is now ready for decision.

**Issue #1**

Plaintiff contends that the Administrative Law Judge ("ALJ") erred in finding that Plaintiff did not have a severe mental impairment. (JS 4-7, 13.)

The ALJ determined that Plaintiff has non-severe medically determinable mental impairments consisting of adjustment disorder with anxiety and depressed mood due to

---

[1/] The Acting Commissioner is substituted as the defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. No further action is needed to continue this case by reason of the last sentence of 42 U.S.C. § 405(g).

injury (improving), pain disorder due to psychological factors and physical injury, intermittent insomnia, (mild) due to pain, and polysubstance abuse and depression. (AR 24.) Plaintiff contends that the ALJ's severity finding is erroneous because he did not articulate legally sufficient reasons for rejecting the opinion of Plaintiff's workers' compensation treating psychiatrist, Thomas A. Curtis, M.D. (JS 4-7, 13.) Dr. Curtis initially evaluated Plaintiff in December 2008. (AR 259-63, 399-418.) Plaintiff reported problems with depression, anxiety, feelings of hopelessness and frustration, diminished self-esteem, insomnia, social withdrawal, irritability, fatigue, and impaired concentration, attention, and memory. (AR 259.) Dr. Curtis diagnosed depressive disorder not otherwise specified with anxiety, and psychological factors affecting a medical condition, including stress-intensified headache, teeth grinding, hair loss, low back muscle tension/pain, shortness of breath, palpitations, constipation and possible stress-aggravated high blood pressure. (AR 263, 408-09.) Dr. Curtis found that Plaintiff works slowly, has decreased interest and ability in personal grooming and hygiene, is able to attend to daily chores, engages in limited communication with friends and family, has difficulty with concentration, memory, and understanding simple written and oral instructions, and is unable to tolerate the stress of a work environment, attend meetings, adhere to a schedule, interact effectively with co-workers or make decisions. (AR 261-62.) Dr. Curtis prescribed four months of weekly cognitive behavioral psychotherapy and stress-reduction biofeedback, as well as medications for depression, emotional control and sleep. (AR 263, 413-14.)

In an April 2009 follow-up report, Dr. Curtis opined that Plaintiff's psychological condition was "permanent and stationary." (AR 367.) He found that Plaintiff had "moderate" impairments in activities of daily living, social functioning, concentration, persistence and pace, and adaptation (deterioration or decompensation in complex work-like settings). (AR 385, 387-89.) Plaintiff informed Dr. Curtis that he had not participated in the prescribed psychotherapy and recommended biofeedback therapy, claiming that he had not been notified of his appointments. (AR 371.) Dr. Curtis again

prescribed four months of weekly psychotherapy and stress-reduction biofeedback therapy, along with psychotropic medications. (AR 371, 391-92.) Dr. Curtis assigned Plaintiff a Global Assessment of Function ("GAF") score of 53, denoting moderate symptoms or moderate difficulty in social, occupational, or school functioning. (AR 383); *see* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev. 2000).

In a June 2010 mental impairment questionnaire, Dr. Curtis opined that Plaintiff's abilities and aptitude needed to perform unskilled, semi-skilled, and skilled work ranged from "fair" (defined as seriously limited, but not precluded) to "poor or none" (defined as no useful ability to function). (AR 263, 408-09, 569, 572-73.) While Plaintiff's GAF rating of 53 remained unchanged since his prior evaluation, Dr. Curtis reported that Plaintiff's mental impairments resulted in the following functional limitations: marked restrictions in activities of daily living; moderate difficulties in maintaining social functioning; frequent deficiencies in concentration, persistence or pace; and repeated (three or more) episodes of deterioration or decompensation. (AR 573.) Dr. Curtis found that Plaintiff was unable to work at any job for the foreseeable future. (AR 571.)

The ALJ provided specific, legitimate reasons based on the record for rejecting Dr. Curtis's opinion. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996) (if a treating or examining physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record). The ALJ rejected Dr. Curtis's June 2010 mental impairment assessment because it conflicted with his previous findings on examination. (AR 25); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (inconsistencies in a physician's opinion concerning level of disability represent a specific and legitimate reason for rejecting it); *Weetman v. Sullivan*, 877 F.2d 20, 23 (9th Cir. 1989) (a physician's opinion may be rejected where it is inconsistent with the physician's own treatment notes). Specifically, Dr. Curtis's June 2010 opinion that Plaintiff had marked limitations in activities of daily living, frequent deficiencies in concentration, persistence and pace, and repeated episodes of deterioration or

decompensation conflicted with his April 2009 opinion that Plaintiff was moderately limited in those areas. (AR 387, 573.) There are no treatment records showing a change in Plaintiff's condition or otherwise justifying the more restrictive functional limitations. While Dr. Curtis did review additional mental health treatment records from the Veterans Administration in January 2010, those records predated Plaintiff's alleged onset of disability by two to three years, and Dr. Curtis expressly stated that those records did not change his earlier opinion. (AR 22, 505.)

   The ALJ also discounted Dr. Curtis's April 2009 opinion that Plaintiff had "moderate" limitations in functioning. (AR 25.) The ALJ found that Plaintiff's failure to participate in prescribed weekly psychotherapy and biofeedback treatment suggested that Plaintiff's mental symptoms were adequately controlled with medication. (AR 25, 371); *see Flaten v. Secretary*, 44 F.3d 1456, 1464 (9th Cir. 1995) (explaining that the ALJ was entitled to draw rational inferences from general lack of treatment in finding the claimant not disabled); *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) (explaining that impairments that can be controlled effectively with medication are not disabling for purposes of determining eligibility for benefits). Plaintiff initially claimed that he had not been informed of his therapy appointments, however, there is no evidence that Plaintiff followed through with psychotherapy or biofeedback after these treatments were prescribed for a second time. (AR 25, 371, 391-92, 643.) Plaintiff asserts that because Dr. Curtis mentioned "psychotherapy (outpatient) on an as needed basis" in the June 2010 mental impairment questionnaire, there is record evidence that he participated in psychotherapy treatment. (JS 7 (citing AR 570).) However, Dr. Curtis's brief reference to psychotherapy does not establish that Plaintiff ever sought or received the prescribed treatment. Given Plaintiff's failure to follow through with psychotherapy, the ALJ reasonably inferred that Plaintiff's mental impairment was not as severe as alleged. (AR 25); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (stating that an ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's complaints that have been properly discounted as incredible).

Moreover, in evaluating the severity of Plaintiff's mental impairments, the ALJ properly relied on the opinions of examining sources. (AR 25-26); *see Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1989). In March 2009, the Commissioner's consultative psychiatric examiner, Lou Ellen Sherrill, Ph.D., diagnosed Plaintiff with alcohol abuse in remission and adjustment disorder with mixed mood. (AR 272.) Dr. Sherrill found that Plaintiff could: perform simple, repetitive tasks with minimal supervision with appropriate persistence and pace; understand, remember and carry out at least simple to moderately complex verbal instructions without difficulty; tolerate ordinary work pressures; interact satisfactorily with co-workers and the public; and observe basic work and safety standards without difficulty. (AR 272-73.) One year later, a workers' compensation qualified agreed panel evaluator, psychiatrist James E. O'Brien, M.D., diagnosed Plaintiff with adjustment disorder with anxiety and depressed mood due to injury (improving), pain disorder due to psychological factors and physical injury, intermittent insomnia (mild, due to pain), male hypoactive sexual desire disorder, and polysubstance abuse and dependence. (AR 637.) Dr. O'Brien gave plaintiff a GAF score of 67, signifying a mild impairment or mild symptoms. (AR 637.) The opinions of the examining physicians constitute substantial evidence supporting the ALJ's finding that Plaintiff's mental impairment was not severe. Any conflict in the properly supported medical opinion evidence was the sole province of the ALJ to resolve. *Andrews*, 53 F.3d at 1041.

For the foregoing reasons, the ALJ did not err in evaluating the severity of Plaintiff's mental impairment. Accordingly, reversal is not warranted based on Issue #1.

///
///
///
///

**Issue #2**

Plaintiff contends that the ALJ improperly rejected the opinion of Plaintiff's workers' compensation treating orthopedic surgeon, Philip A. Sobol, M.D. (JS 14-16, 18-20.) The Court agrees.

Dr. Sobol conducted an initial orthopedic evaluation of Plaintiff in November 2008. (AR 334-41.) Dr. Sobol diagnosed lumbar spine musculoligamentous sprain/strain with bilateral lower extremity radiculitis, severe stenosis at L3-L4 and moderate stenosis at L2-L3 and L4-L5. (AR 339.) In August 2009, Dr. Sobol issued a permanent and stationary report. (AR 457-70.) In addition to the lumbar spine musculoligamentous sprain/strain diagnosis, Dr. Sobol found that Plaintiff suffered from bilateral upper extremity overuse syndrome, including bilateral wrist/forearm flexor and extensor tendinitis and bilateral carpal tunnel syndrome. (AR 461.) Dr. Sobol concluded that Plaintiff's lumbar spine impairment precluded heavy work activities, which signified that Plaintiff had lost 50 percent of his pre-injury capacity for lifting, bending, stooping, pushing, pulling and climbing. (AR 466.) Dr. Sobol further found that Plaintiff's upper extremity impairments precluded heavy lifting, repetitive flexion and extension of the wrists, repetitive finger dexterity, fine manipulation, and repetitive or forceful pushing, pulling, gripping, grasping, squeezing, holding, and torquing. (AR 468.)

In a June 2010 Residual Functional Capacity ("RFC") questionnaire, Dr. Sobol assessed significantly greater work-related restrictions. (AR 538-44.) He reported that Plaintiff could sit 20 minutes at a time for a total of 2 hours in a workday, stand 15-20 minutes at a time for a total of less than 2 hours in a workday, and lift up to 20 pounds occasionally, has significant limitations in repetitive reaching, handling, fingering and bending, needs to be able to shift positions at will, take unscheduled breaks and walk around every 20 to 30 minutes, and is likely to be absent from work more than three times a month. (AR 541-43.)

The ALJ determined that Plaintiff has severe impairments consisting of spinal stenosis at L3-L4, degenerative disc disease of the lumbar spine and cervical spine, and

essential hypertension. (AR 24.) For the period beginning on April 8, 2008, Plaintiff's alleged onset date of disability, through March 1, 2010, the ALJ found that Dr. Sobol's opinion that Plaintiff was precluded from heavy work activities (i.e., 50% loss of his pre-injury capacity of lifting up 50 pounds occasionally) was consistent with Plaintiff's RFC assessment for light work. (AR 28-29.) However, the ALJ rejected Dr. Sobol's opinion regarding Plaintiff's carpal tunnel syndrome and assessment of upper extremity limitations, as unsupported by the medical evidence and inconsistent with the opinion of the non-examining state agency physician. (AR 29, 342-46.) The ALJ determined that Plaintiff could frequently push, pull, handle, and finger with his right hand/upper extremity, and had no limitations with his left upper extremity. (AR 27.) For the period beginning on March 2, 2010, the ALJ relied on three examining source opinions from March 2010 to find that Plaintiff has an RFC for medium work.[2] (AR 26-27, 30-31, 532-36, 577-85, 647-80.)

The ALJ did not offer a sufficiently specific reason for rejecting Dr. Sobol's assessment of Plaintiff's upper extremity limitations, with respect to the period from April 8, 2008, through March 1, 2010. Merely stating that Dr. Sobol's opinion was supported by little medical evidence was not sufficient. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings . . . does not achieve the level of specificity our prior cases have required."). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Embrey*, 849 F.2d at 421-22. The ALJ here did not explain what specific objective findings fail to support Dr. Sobol's opinion with

---

[2] Although the ALJ stated that Plaintiff could perform the full range of medium work, he found that Plaintiff was able to "exert 20 to 50 pounds of force occasionally and/or 10 to 20 pounds of force frequently and/or greater than negligible up to 10 pounds of force constantly to move objects." (AR 30-31.) Medium work, however, requires the ability to lift up to "50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1520(f). The ALJ did not address the inconsistency between his RFC assessment and the regulations definition for medium work.

respect to Plaintiff's carpal tunnel syndrome and upper extremity limitations. (AR at 29.) Rather, the ALJ acknowledged that Plaintiff's "severe cervical spine impairment reasonably explains some of Dr. Sobol's upper extremity limitations," and a June 2009 electromyogram and nerve conduction study was abnormal. (AR 28-29, 555, 560-61.) The medical record provides support for Dr. Sobol's assessment of upper extremity limitations. An MRI of Plaintiff's cervical spine from May 2009 revealed multilevel degenerative changes of the cervical spine and focal central disc protrusions of the C3-4, C4-5, and C5-6 level. (AR 561.) In addition, a June 2009 electromyogram and nerve conduction study of Plaintiff's bilateral median motor nerves showed carpal tunnel syndrome that was slightly worse on the right. (AR 555.) Further, on examination in August 2009, Dr. Sobol noted tenderness to palpation over the flexor and extensor tendons and muscles of the wrists and forearms, positive Tinel's sign at the transverse carpal ligament, positive Phalen's test, and reduced range of motion in flexion and extension of the wrists, bilaterally. (AR 460.) Thus, the ALJ improperly rejected Dr. Sobol's opinion on the basis that it was not supported by the medical evidence. *See Embrey*, 849 F.2d at 421-22; *see also* 20 C.F.R. § 404.1527(c) (the proper weight that an ALJ should give to a treating physician's opinion depends on whether sufficient data supports the opinion and whether the opinion comports with other evidence in the record).

Further, rejecting Dr. Sobol's opinion simply because it was inconsistent with a non-examining physician's opinion is not a legitimate and specific reason. (AR 29, 342-46); *see Embrey*, 849 F.2d at 421 ("We have made it clear that the medical opinions of a claimant's treating physicians are entitled to special weight and that, if the ALJ chooses to disregard them, he must set forth specific legitimate reasons for doing so, and this decision must itself be based on substantial evidence.") While a nonexamining medical expert's opinion may constitute substantial evidence when it is consistent with other independent evidence, *Tonapetyan*, 242 F.3d at 1149, the ALJ here failed to point to such independent evidence. The Commissioner argues that the ALJ properly discounted

Dr. Sobol's opinion based on the opinions of three examining sources from March 2010. (JS 17-18; AR 30-31, 532-36, 577-85, 647-80); *see Tonapetyan*, 242 F.3d at 1149. While these opinions were supported by independent clinical findings, the ALJ relied on the examining source opinions to reject Dr. Sobol's opinion only with respect to the period beginning on March 2, 2010. (AR 31.) Thus, the ALJ failed to give specific, legitimate reasons, supported by substantial evidence, to discredit Dr. Sobol's assessment of Plaintiff's upper extremity limitations for the period from April 8, 2008, through March 1, 2010.

Accordingly, Plaintiff is entitled to remand for further proceedings on Issue #2.

## ORDER

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

The Court finds a remand is appropriate because there are unresolved issues that, when properly resolved, may ultimately still lead to a not disabled finding. *See INS v. Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353 (2002) (upon reversal of administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (internal quotation marks and citation omitted). Accordingly, the present case is remanded for further proceedings consistent with this Order.

IT IS THEREFORE ORDERED that a judgment be entered reversing the Commissioner's final decision and remanding the case so the ALJ may make further findings consistent with this Order.

DATED: September 19, 2013

_____
ARTHUR NAKAZATO
UNITED STATES MAGISTRATE JUDGE